**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03 C 4774 |
| | ) | |
| OBERWEIS DAIRY, | ) | Judge Darrah |
| | ) | Magistrate Nolan |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Plaintiff Jane Doe, a former employee of Defendant Oberweis Dairy alleges that Oberweis is liable for sexual harassment, negligence, willful and wanton conduct, and assault and battery due to the actions of another former Oberweis employee, James "Matt" Nayman. More specifically, Doe claims that then 24-year old Nayman was "overly friendly" with her at work and that he ultimately had sex with her at his apartment, when she was 3-weeks shy of her 17th birthday. The uncontested facts and law described below clearly establish that Oberweis is not responsible for any injury to Doe.

In particular, summary judgment must be granted for Oberweis on Doe's claim arising under Title VII of the Civil Rights Act of 1964 (Count I) because she failed to exhaust her administrative remedies, she cannot establish a prima facie case of sexual harassment, and she cannot show that Oberweis is liable for any inappropriate conduct. Indeed, as she did in this lawsuit, Doe made outrageous allegations to the Equal Employment Opportunity Commission but refused to submit to an interview or provide any additional information to the investigator. Then, after months and months of refusing to cooperate, when Doe finally appeared for her deposition in this suit, her own admissions utterly failed to substantiate her allegations. In fact, Doe's admissions at her deposition clearly

1

demonstrate that any conduct by Nayman was not unwelcome, based upon sex, or severe or pervasive. Likewise, summary judgment is appropriate on Doe's state claims because these claims are precluded by the Illinois Worker's Compensation Act and the Illinois Human Rights Act. Moreover, Doe simply cannot satisfy the elements of her negligence (Count II), willful and wanton conduct (Count V) and assault and battery claims (Count VI).[1]  For these reasons, Doe's suit should be dismissed in its entirety with prejudice.

## FACTS

Oberweis incorporates its Statement of Uncontested Facts, cited herein as "Stmt. ¶ ___."

## ARGUMENT

### I.    Standard For Summary Judgment

Summary judgment is granted if the pleadings, depositions, affidavits and other materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To avoid summary judgment the non-moving party must provide sufficient evidence that a reasonable trier of fact could return a verdict in its favor and must do more than raise a "metaphysical doubt" as to the material facts. See Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).

### II.   Summary Judgment Must Be Granted For Oberweis On Doe's Sexual Harassment Claim

#### A.    Doe Failed To Exhaust Her Administrative Remedies

It is well established that before filing a lawsuit under Title VII, a plaintiff must timely file a charge with and receive a right to sue letter from the EEOC. Many district court decisions have held that a failure to cooperate with the EEOC constitutes a "fatal failure to exhaust administrative remedies." Morris v. Albertson, Inc., 2001 WL 936118, *2 (N.D. Ill. Aug. 17, 2001) (copy at Ex. Z)[2];

---

[1] Doe voluntarily dismissed her claims for intentional and negligent infliction of emotional distress (Counts III and IV).

[2] Citations are to exhibits attached to Defendant's Appendix to its Motion for Summary Judgment ("Ex. ___").

2

see also Duncan v. Consolidated Freightways Corp., 1995 WL 530652, *3 (N.D. Ill. Sept. 7, 1995)

(copy at Ex. AA); Dates v. Phelps Dodge Magnet Wire Co., 604 F. Supp. 22, 26 (N.D. Ind. 1984).

Doe's behavior during the EEOC's investigation of her charge is a classic example of a failure to

cooperate in the administrative processing of her claim. As this Court is well aware, Doe refused to be

deposed in this lawsuit for months until this Court ordered her to appear for her deposition. During the

EEOC's investigation of her charge, Doe similarly refused to submit to an interview or provide the

investigator with any details regarding her complaint besides the bare allegations of her charge. The

investigator repeatedly contacted Doe's attorney over a three-month period to schedule an interview

but to no avail (Ex. X). Finally, on April 28, 2003, the EEOC had no choice but to dismiss Doe's

charge for failure to cooperate (Ex. Y). As the court stated in Morris:

> Plaintiff's failure to cooperate with the EEOC rendered the Commission unable to
> investigate effectively her charge and carry out its congressional mandate. To allow
> [plaintiff] to bring [her] Title VII claims in federal court under such circumstances
> would be to allow [her] to emasculate Congressional intent by short circuiting the twin
> objectives of investigation and conciliation.

2001 WL 936118 at *2. Accordingly, Doe's Title VII claim must be dismissed due to her failure to

exhaust her administrative remedies.

### B.    Legal Standard Applicable To Doe's Sexual Harassment Claim

To state a claim of hostile work environment sexual harassment, Doe must show that: (1) she

belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was

based upon sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of

her employment and create an abusive working environment; and (5) some basis for employer liability

has been established. See Crenshaw v. Delray Farms, Inc., 968 F. Supp. 1300, 1305 (N.D. Ill. 1997).

Doe can satisfy the first element because she is female, but she cannot meet any of the other

requirements.

3

256836.1

Indeed, Doe's allegations of workplace harassment only amount to the following acts occurring over the 8 months of her employment, between January and August of 2002:

- Beginning early in her employment, Nayman squeezed her arm above the elbow and asked her how she was doing five or six times (Ex. A pp. 101-03). She responded by telling him whether she was feeling happy, sad, etc. (Id.).

- Also beginning early in her employment, Nayman put his arm around her, smiled and gave her a "side hug" or "sideways squeeze" five or six times (Id. at 102-04). Doe did not believe this was sexual (Id.).

- In February or March, Nayman told her she was pretty, that he did not know why she did not have a boyfriend and that if she were older, he would want to date her (Id. at 100). Doe found these comments flattering, not offensive (Id.).

- In March, Nayman gave her a hug and a kiss on the cheek and told her that she looked sad (Id. at 97-98). Doe thought that he was trying to make her happy (Id. at 99).

- In June, Nayman hit her on the behind with a rag "playfully" (Id. at 95-96).

- Between June and August, Nayman told her she was cute on three or four occasions (Id. at 107-108).

- On one occasion, Nayman gave her an "I'm happy to see you type of hug" when she arrived at work (Id. at 109).

For the reasons explained below, these allegations do not constitute actionable sexual harassment as a matter of law.

## C. Acts Occurring Outside The Workplace Cannot Support Doe's Hostile Work Environment Claim

Doe's suit relies almost entirely on one single event — the sex act between Doe and Nayman in late August 2002. However, this act cannot serve as a basis for Doe's claim of hostile work environment because it happened after working hours, at an hourly employee's private apartment, with no member of management present. Courts have consistently held that an employer is not liable for the harassment or other unlawful conduct of non-supervisory employees after work hours and away from the workplace. See, e.g., Duggins v. Steak 'N Shake, Inc., 2001 WL 92166 (6th Cir. Jan. 26, 2001) (copy at Ex. BB) (rejecting sexual harassment claim based on sexual assault that occurred at

4

employee's private party); Hunter v. Countryside Assoc. for the Handicapped, Inc., 723 F. Supp. 1277 (N.D. Ill. 1989) (holding that employer was not liable for sexual assault that occurred at employee's apartment). As explained below in Section II.F.2., Nayman was not a supervisor or member of management. Furthermore, Doe's visit to Nayman's apartment was completely unrelated to work. She conceded that she voluntarily went to his apartment alone "to hang out like normal" and that she had not even worked that day (Ex. A pp. 76,78). Therefore, the conduct that occurred that night cannot support her hostile work environment claim.

Similarly, Doe cannot base her workplace harassment claim on Nayman's conduct toward and possible relationships with other employees outside of work. Even when an employee is engaged in a sexual relationship with her supervisor, such a relationship is not prohibited by Title VII or by most sexual harassment policies. See McCombs v. Chrysler Corp. of Kokomo, 2003 WL 1903352, at *7 (S.D. Ind. 2003) (copy at Ex. CC) (stating that "consensual sexual relationships between superiors and their subordinates may be unwise for many different reasons, but they are not prohibited by Title VII or the Defendant's sexual harassment prevention policy"). It is undisputed that Nayman's relationships with fellow shift manager Sasha Pestka and scooper Tina Thilk were consensual and occurred away from work (Ex. E pp. 55-56; Ex. G p. 100; Ex. L pp. 44-45). Indeed, Doe and other employees confirmed that Thilk hid her relationship with Nayman from store manager Kathy Von Bergen (Ex. A p. 128; Ex. I pp. 77-78; Ex. L pp. 55-57). Accordingly, these relationships cannot form the basis of Doe's hostile work environment claim.

**D.     The Conduct Alleged by Doe Was Not Unwelcome**

Even if the sexual act between Doe and Nayman at his apartment is considered part of Doe's hostile work environment claim, the act was not unwelcome as required for her to establish sexual harassment. Doe admits that she voluntarily went to Nayman's apartment alone on one occasion and that they had "sex" (Ex. A pp. 75-84). She did not say he forced himself on her or that she was

5

coerced. In fact, before they had sex, Nayman left the room because Doe asked him to get a condom (Id. at 82). Moreover, a few days after their sexual encounter, Doe asked Nayman to buy alcohol for her friend Kaitlyn Considine's party (Id. at 15-17). Doe picked Nayman up at his apartment, took him to the grocery store and then took him to the party with her (Id. at 19-23). [3] Doe, Nayman and several others spent the night at Considine's house (Id. at 26-27). The next morning, Doe drove Nayman home (Id. at 28). Later that day, Doe even called Nayman "to make sure he was okay" (Id. at 33-36). These are simply not the actions of an individual who was intimidated or coerced by Nayman. Indeed, after this sexual encounter, Doe was upset with Nayman only because "it was emotional for [her] being [her] first time" and it was "hurtful" that Nayman did not talk to her about it afterwards (Id. at 142).

All that said, the Company does not condone what happened between Doe and Nayman. Oberweis concedes that Nayman pled guilty to aggravated criminal sexual abuse of a minor. Nevertheless, by Doe's own admissions, the sex act was welcome for purposes of sexual harassment law and cannot support her hostile work environment claim.

Furthermore, Doe cannot establish that the alleged conduct by Nayman at the workplace was unwelcome. She admitted that she was flattered by Nayman's comments to her, and she thought he was being playful or trying to make her happy (Ex. A pp. 95-103). She conceded that she went to Nayman's apartment four or five times beginning in May 2002 even though she claims Nayman started harassing her as early as February or March of 2002 (Id. at 54, 100-104). When Nayman gave her "goodbye hugs" at his apartment, she was not offended by this behavior (Id. at 139-140). Doe even continued to go to Nayman's apartment after her mother told her not to go (Id. at 68-69). Moreover, when Doe's mother told Nayman not to spend time with her daughter anymore, Doe told Nayman "don't worry about it" and continued to spend time with Nayman away from work (Id. at 66-67). Finally, Doe voluntarily drove Nayman to his relative's house 45 minutes away (Id. at 71,73). Doe's

---

[3] Considine actually stated in her deposition that she and Doe went to Nayman's apartment twice that day – once earlier that day when Doe introduced Considine to Nayman and later in the early evening when they picked him up to take him to the grocery store (Ex. N pp. 33-37).

256836.1

repeated visits to Nayman's apartment and agreement to spend hours alone with him on a trip to his relative's house belie her claim that his conduct was unwelcome. Because any conduct by Nayman towards Doe was welcome and consensual, Doe's sexual harassment claim must be dismissed.

**E.      The Alleged Conduct By Nayman Was Not Based Upon Sex**

Doe is also unable to establish a prima facie case of sexual harassment because any workplace conduct by Nayman was not based upon sex. Doe admitted that she did not believe Nayman's actions were sexual (Id. at 102-104). It is also undisputed that Nayman was generally a friendly, outgoing person (Ex. B p. 78; Ex. D pp. 17-19; Ex. L p. 61). Doe admitted that he put his arms around men and women (Ex. A pp. 113-14). Because Nayman hugged and touched both male and female employees in the Bartlett store, Doe cannot show that any workplace conduct by Nayman was because of sex. See Holman v. State of Indiana, 211 F.3d 399, 403-04 (7th Cir. 2000) (stating that Title VII does not prohibit the "equal opportunity" harasser who treats both sexes the same).

**F.      Any Harassing Conduct Was Not Severe or Pervasive**

Even considering all of Doe's allegations of harassment together, Nayman's conduct simply does not rise to the level of actionable sexual harassment. Doe cannot raise a genuine issue of material fact as to whether the conduct was so severe or pervasive as to alter the conditions of her employment. Title VII does not impose a "general civility code" upon employees. See Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 181 (1998). Indeed, Title VII only protects employees against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim herself subjectively sees as abusive. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). Whether an objectively hostile environment exists is a question of law. See Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 345 (7th Cir. 1999). The factors to be considered include "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or

7

humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23.

Here, no reasonable person could find that Nayman's acts were so severe or pervasive as to alter the terms and conditions of Doe's employment. Case law consistently holds that there must be "more than a few isolated incidents" of harassment to establish a violation of Title VII. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 768 (1998). Doe has only alleged isolated and "sporadic" acts by Nayman over an eight month period (Ex. A p. 104). She concedes that the conduct she relies upon was not offensive (Id. at 100). Yet, the Seventh Circuit has rejected claims of hostile work environment even where the actions were found to be offensive. See, e.g., Koelsch v. Beltone Elecs. Corp., 46 F.3d 705, 706 (7th Cir. 1994) (supervisor rubbed foot against plaintiff during company meetings, grabbed her buttocks, and asked her out to dinner on two occasions); Saxton v. American Telephone & Telegraph, 10 F.3d 526 (7th Cir. 1993) (supervisor rubbed his hands over plaintiff's knees, forced her to kiss him, and attempted to grab her from behind). Indeed, although Nayman's alleged touching and hugging in the workplace may be inappropriate, it is simply not actionable harassment under Title VII. See Hilt-Dyson v. City of Chicago, 282 F.3d 456, 463-64 (7th Cir. 2002) (finding that supervisor's back rubbing of plaintiff did not constitute harassment); Weiss v. Coca Cola Bottling Co., 990 F.2d 333, 337 (7th Cir. 1993) (holding that conduct by co-worker, which included unwanted touching of plaintiff, attempts to kiss, placing "I love you" signs in her work area, and asking a female employee out on dates did not create a hostile work environment).

Doe is also unable to show that she subjectively perceived Nayman's conduct to be abusive. Doe admitted that Nayman's conduct did not affect her ability to perform her job. Rather, she simply "went about working." (Ex. A p. 102). She admits that she considered Nayman to be a friend and that she spent a good deal of time with Nayman outside of work, at his apartment (Id. at 54-78, 86-87). In fact, Doe's only problem with Nayman's workplace conduct is that he was "overly friendly." (Id. at

8

87). Any "overly friendly" behavior by Nayman, however, is far from the type of abusive conduct covered by Title VII. Furthermore, Doe's failure to complain about Nayman's behavior demonstrates that she did not perceive it to be harassing. See Woodland v. Joseph T. Ryerson & Son, Inc., 302 F.3d 839, 843-44 (8th Cir. 2002) (holding that fact that plaintiff chose not to report many of the incidents was "strong evidence that, while offensive, these incidents did not subjectively affect the conditions of [the plaintiff's] employment"). Doe's perception of Nayman's conduct is further evidenced by Doe's continued visits to Nayman's apartment and her time spent with him outside of work. These facts certainly establish that Doe did not subjectively perceive Nayman's conduct to be harassing.

Because the workplace conduct directed at Doe is minimal, Doe attempts to rely on Nayman's behavior toward other female employees. For example, Doe alleges that Nayman gave several female employees "friendly hugs" and gave Thilk romantic hugs (Ex. A p. 114-17). Doe also claims that Thilk once told Doe that Nayman gave her a "titty twister" at work (Id. at 119).[4] As an initial matter, these actions were not directed at Doe, so the impact of that behavior is not as great as if they were directed at her. See Russell v. Board of Trustees of University of Illinois at Chicago, 243 F.3d 336 (7th Cir. 2001). Furthermore, it is undisputed that the employees to whom Nayman's actions were directed welcomed his friendly gestures (Ex. D pp. 32-34, 81-82; Ex. E p. 131; Ex. I p. 81). In fact, Carrie Rafferty stated that she is the one who often initiated hugs with Nayman (Ex. I p. 81). Finally, because Doe did not witness the alleged "titty twister," that conduct does not support her claim that *she* was the victim of sexual harassment. See Ngeunjuntr v. Metro Life Ins. Co., 146 F.3d 464 (7th Cir. 1998) (affirming summary judgment on harassment claim where alleged offensive comments were made to employees other than the plaintiff and outside the plaintiff's presence). In sum, Doe's suit must be dismissed because the workplace conduct she alleges is simply not the type of severe or pervasive conduct prohibited by Title VII.

---

[4] Thilk absolutely denies that she made this comment or that Nayman would ever engage in such behavior (Ex. L pp. 60-61).

256836.1

### F.    Oberweis Is Not Liable For The Alleged Harassment

Summary judgment should also be granted for Oberweis because there is no basis for Oberweis

to be held liable for any harassment.  An employer's liability for a hostile work environment depends

on whether the harasser is the victim's supervisor or merely a co-worker.  See Burlington Indus. v.

Ellerth, 524 U.S. 742, 765 (1998); Rhodes v. Illinois Dept. of Trans., 359 F.3d 498 (7th Cir. 2004).

Sexual harassment by an employee's supervisor triggers strict liability under Title VII, subject to a

possible affirmative defense if the plaintiff suffered no tangible job action.  Parkins v. Civil Constrs. of

Ill., Inc., 163 F.3d 1027, 1032 (7th Cir. 1998).  However, "an employer may be found liable for a

hostile work environment created by an employee who was not the plaintiff's supervisor only where

the plaintiff proves that the employer has 'been negligent either in discovering or remedying the

harassment.'"  Rhodes, 359 F.3d at 505 (quoting Parkins,163 F.3d at 1032.)

#### 1.    Nayman Was Doe's Co-Worker, Not Her Supervisor

"A supervisor is someone with the power to <u>directly</u> affect the terms and conditions of the

plaintiff's employment."  Rhodes, 359 F.3d at 506.  In contrast, an employee who merely has authority

to oversee aspects of another employee's job performance does <u>not</u> qualify as a supervisor in the Title

VII context.  See id. (citing Hall v. Bodine Elec. Co., 276 F.3d 345, 355 (7th Cir. 2002)).  In Hall, the

Court held that the plaintiff's harasser was not a supervisor even though the harasser: (1) exercised

authority to direct plaintiff's work operations; (2) provided input into her performance evaluations; and

(3) was charged with training her and other less-experienced employees.  Hall, 276 F.3d at 355.

Here, Doe claims that Nayman committed the alleged harassment.  Similar to the alleged

harassers in Hall and Rhodes, Nayman does not have authority to make any decisions affecting the

terms and conditions of Doe's employment -- i.e., the authority to hire, fire, promote or transfer Doe.

Specifically, Nayman held the position of shift manager, which occasionally involves assigning

scoopers to perform particular tasks on a shift.  Each deponent questioned on the subject has confirmed

10

that shift managers do not have authority to hire, fire, discipline or evaluate employees (Stmt. ¶¶ 4-5).

Even Doe stated that she does not remember Nayman or anyone else telling her that Nayman was her

supervisor (Ex. A pp. 92-93). She simply thought that Nayman was "in charge" when the manager

was busy in the office (Id. at 91). However, Doe concedes that she only worked with Nayman alone "a

handful" of times (Id.). Additionally, the employee schedules confirm that Doe and Nayman only

worked together twice when an assistant manager or store manager was not present (Ex. A pp. 93-94;

Ex. P). Thus, Doe's own admissions and the undisputed facts establish that Nayman was not Doe's

supervisor. Accordingly, Oberweis' liability for Nayman's actions must be determined according to

the standard for co-employees.

### 3. Oberweis Was Not Negligent In Discovering Or Remedying Any Harassment

Because Nayman was not Doe's supervisor, Doe must proffer competent evidence that

Oberweis was negligent either in discovering or remedying the alleged harassment directed at her in

order to defeat Oberweis' motion for summary judgment. Rhodes, 359 F.3d at 505; Hall, 276 F.3d at

355. Doe cannot do so. In the context of co-worker harassment, an employer "will not be liable for

hostile environment absent proof that it failed to take appropriate remedial measures once apprised of

the harassment." Rhodes, 359 F.3d at 506. An employer is not apprised of harassment "unless the

employee makes a concerted effort to inform the employer that a problem exists." Id. If an employer

does not have knowledge of harassing conduct, it is only required to promote general anti-harassment

policies and training to ensure compliance with Title VII. See id. Applying these standards, Oberweis

did not act negligently in discovering or remedying the alleged harassment toward Doe. Moreover,

even if Nayman were Doe's supervisor, the facts below establish that Oberweis has satisfied the

affirmative defense described in Ellerth, 524 U.S. at 765.

First, it is undisputed that Doe never told Nayman to stop his "overly friendly" workplace

behavior and never complained of his conduct to anyone in Oberweis management (Ex. A pp. 106,

11

121-24, 132).[5]  Doe saw store manager Von Bergen and assistant manager Hultgren virtually every time she worked and clearly could have reported any problems to them (Id. at 52, 121-122; Ex. P). Indeed, Doe admitted that she often talked to Von Bergen and that she was friends with Hultgren (Id. at 52, 121-22).  Doe also saw district manager Fuson periodically, but she likewise failed to report any inappropriate behavior to him (Id. at 106, 121-24, 132, 164-65).

Doe claims that she did not complain about Nayman's behavior because she did not feel "comfortable" reporting it and she was afraid other employees would think she was "not a nice person" (Id. at 106, 123).  However, an employee's "apprehension does not eliminate the requirement that the employee report harassment: an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under Ellerth to alert the employer to the allegedly hostile environment."  Hill v. American General Finance, Inc., 218 F.3d 639 (7th Cir. 2000).  The Seventh Circuit rejected an excuse strikingly similar to Doe's in Shaw v. AutoZone, 180 F.3d 806, 811 (7th Cir. 1999).  As in this case, the employee in Shaw claimed she "didn't feel comfortable enough with anyone at AutoZone to speak with them about [the harassment]."  Id. at 813.  The court recognized the "inevitable unpleasantness" involved in reporting sexual harassment but held that this feeling did not excuse the employee from complaining to her employer.  See id.  Similarly, Doe's reasons for failing to report Nayman's behavior are insufficient to alleviate her duty to notify the Company of alleged harassing conduct.

Moreover, Doe does not claim that Oberweis management was otherwise aware of Nayman's alleged conduct toward her.  In fact, Doe admits that, to her knowledge, neither Von Bergen nor Hultgren observed any of Nayman's workplace conduct toward her (Ex. A p.113).  Doe also has no reason to believe Von Bergen knew she was going to Nayman's apartment (Id. at 64).  Rather, Doe's only allegation of Oberweis' knowledge is that Von Bergen "had to have known" that Nayman was

---

[5] In fact, Doe never complained of Nayman's behavior to anyone, including her co-workers (Ex. D p. 84; Ex. E p. 131; Ex. I p. 77).

256836.1

dating Thilk (Id. at 128). However, Doe's unsupported speculation regarding Von Bergen's knowledge must be disregarded. See Visser v. Packer Engineering Assoc., 924 F.2d 655, 659 (7th Cir. 1991) (stating that "Discrimination law would be unmanageable if disgruntled employees ... could defeat summary judgment by . . . speculating"). Significantly, Doe concedes that Thilk hid her relationship with Nayman from Von Bergen and that she cannot identify any facts to support her belief that Von Bergen knew about their relationship (Id. at 128, 130). Every other employee deposed on this issue confirmed that Von Bergen was not aware of Nayman's relationship with Thilk (Ex. D p. 41; Ex. E p. 161; Ex. I pp. 37, 38-40, 74-75, 77-78; Ex. L pp. 36-40). Moreover, even if Von Bergen knew of a relationship between Thilk and Nayman, such information is insufficient to put Oberweis on notice of the alleged harassment of Doe. Indeed, several deponents indicated that they were "shocked" and that they did not suspect any type of relationship between Doe and Nayman (Ex. D pp. 87-8; Ex. E pp. 144-145; Ex. I p. 45).

Because Doe never complained to management, Oberweis did not learn of Doe's allegations of inappropriate conduct by Nayman until Doe's mother called Von Bergen on or about September 3 and stated that she was pressing criminal charges against Nayman. Von Bergen immediately reported Mrs. Doe's allegations to Fuson, who in turn notified former Human Resources Generalist Michelle Stefan at Oberweis' corporate office (Ex. B pp. 104-07; Ex. C pp. 27-30; Ex. S). Von Bergen also interviewed Nayman regarding whether he had engaged in any inappropriate conduct at work (Ex. B pp. 104-07; Ex. S). Ms. Stefan informed Vice President of Route Sales Michael McCarthy, who was in charge of investigating claims of harassment for the Company (Ex. K pp. 7, 9-10, 70-72; Ex. U). Vice President of Retail Operations Elizabeth Craig and Stefan then contacted Doe's mother and asked her to submit a written complaint (Ex. F pp. 27-31; Ex. J pp. 81-82; Ex. M pp. 73-76; Ex. U). McCarthy also spoke to Doe's mother several times in an attempt to investigate the claim. Specifically, McCarthy told Mrs. Doe that because of the severity of her allegations, he would accept

13

an oral complaint instead of a written one (Ex. K pp. 74-76; Ex. M pp. 75-76, 79). McCarthy also requested that he be allowed to meet with Doe and her mother whenever they were ready to speak to him (Ex. K pp. 75, 79-80). McCarthy followed up this conversation with a letter in which he made the same request (Ex. K pp. 75-79-80; Ex. V). Nevertheless, Doe refused to be interviewed or to cooperate with Oberweis' investigation.

It is evident from these facts that Oberweis did not have knowledge of any harassing conduct until September 3 and that it made every effort to investigate the claims once it learned of Doe's allegations. Doe, on the other hand, unreasonably failed to take advantage of the preventive and corrective opportunities provided by Oberweis. Consequently, under Rhodes, Oberweis is only required to show that it promoted general anti-harassment policies and training. 359 F.3d at 506. Oberweis has had an anti-harassment policy throughout Doe's employment (Ex. A pp. 44-45; Ex. O). Oberweis' employee handbook contains a provision prohibiting sexual harassment, as well as an open door policy and grievance procedure, which provide that an employee should discuss questions regarding the handbook or any other issue with their manager, then the district manager, director of operations or vice president of retail operations (Ex. O). The employee handbook is given to all employees when they are hired and was given to Doe when she joined the Company in December 2001 (Ex. A pp. 44-45; Ex. C pp. 8-10). Doe reviewed the handbook and knew that Oberweis had a sexual harassment policy (Ex. A pp. 44-45, 131). The sexual harassment policy and complaint procedure was also posted on the bulletin board at the Bartlett store (Stmt. ¶ 22).

Additionally, Oberweis provides sexual harassment training to its employees and managers. Store managers and assistant managers receive sexual harassment training each year. On June 25, 2002, Von Bergen, Hultgren, Fuson and other managers attended training on the Company's sexual harassment policy and procedures (Stmt. ¶¶ 23-25). Store managers also periodically provide sexual harassment training to shift managers and scoopers. For instance, Von Bergen discussed the

14

Company's sexual harassment policy at a mandatory store meeting on July 21, 2002 (Stmt. ¶ 26).

Unfortunately, Doe was the only employee who did not attend this meeting (Stmt. ¶ 27). Thus,

Oberweis' policies and training, as well as the undisputed facts, clearly demonstrate that Oberweis was

not negligent in either discovering or remedying any alleged harassment.

### 4. Oberweis Did Not Receive Any Other Notice Of Harassment by Nayman

Because Doe's own testimony, as described above, does not support her allegation that

Oberweis knew Nayman harassed her and other female employees, Doe may attempt to rely on the

testimony of her mother and former shift manager Karen Duhame. Specifically, both Mrs. Doe and

Duhame agree that Mrs. Doe told Duhame in July or August 2002 that she had a complaint about

Nayman (Ex. H pp. 67-69, 129-30; Ex. M pp. 19-22, 49-50). Both also agree that Duhame said she

would inform Von Bergen of Mrs. Doe's complaint (Ex. H pp. 67-69, 129-30; Ex. M pp. 19-22, 49-

50). However, it is undisputed that neither Duhame nor Mrs. Doe ever spoke to Von Bergen about this

complaint (Ex. H pp. 67-69, 129-30; Ex. M pp. 19-22, 49-50).[6] According to Duhame, she clearly told

Mrs. Doe that she could not handle the complaint because she was "not management" (Ex. H p. 67).

Similarly, Mrs. Doe claims that she later telephoned the Bartlett store to ask Von Bergen that Nayman

and Doe no longer work the same shift (Ex. M pp. 50-52). Mrs. Doe admits that she never made this

request to Von Bergen but spoke to Nayman instead (Id.). Thus, the undisputed evidence clearly

shows that neither Doe nor her mother reported any inappropriate conduct by Nayman to Von Bergen

or any other member of Oberweis management.

Doe has also made outrageous allegations in her discovery responses that Duhame and Von

Bergen witnessed Nayman's harassment and seduction of Doe and several female employees. Yet,

Doe's own admissions at her deposition contradict this allegation. She conceded that she does not

---

[6] Mrs. Doe and Duhame disagree about whether Mrs. Doe gave Duhame specific details about her complaint regarding Nayman (Ex. H pp. 67-69, 129-30). Duhame also claims that she left a note for Von Bergen to contact Mrs. Doe, but Von Bergen states that Duhame never informed her of Mrs. Doe's complaint (Ex. B pp. 90-91; Ex. H pp. 68-69).

256836.1

know of any instance where managers Von Bergen or Hultgren witnessed any inappropriate behavior

by Nayman (Ex. A p. 113). Each of the individuals who were deposed adamantly denied that Nayman

harassed or seduced them (Ex. D p. 83; Ex. E pp. 145-46; Ex. I pp. 81-82; Ex. L pp. 157-59).

Furthermore, each deponent has testified that they did not witness any conduct by Nayman that they

perceived to be sexually offensive. Indeed, the female employees deposed testified as follows

regarding Nayman's workplace conduct:

- Hultgren testified that she was "extremely surprised" by the allegations of Nayman's conduct because she never saw him engage in any offensive behavior (Ex. D pp. 80-84).

- Duhame testified that when she was pregnant Nayman would pat her on the tummy. However, she testified that she did not see Nayman do anything of a sexually offensive nature to anyone (Ex. H pp. 38, 93-97, 114-15).

- Pestka testified that she worked with Nayman on a regular basis and that he "never" did anything sexual or offensive. She indicated that any allegations to the contrary were "preposterous" and that there's "no truth" to them. She also stated that the Company took its sexual harassment policy very seriously and that Von Bergen would not tolerate any harassing conduct (Ex. E pp. 140, 142, 144, 145-146).

- Rafferty stated that the allegation that Nayman harassed her or anyone else is "crazy." She indicated that he never touched anyone and that, if anything, she was the one who would often give him a hug. She also said if anyone had been engaging in offensive behavior, Von Bergen would have stopped it (Ex. I pp. 79-82).

- Thilk testified that allegations of harassing or seductive behavior by Nayman are simply "wrong" and that she never saw any offensive conduct at the workplace. She further stated that Von Bergen would never tolerate offensive conduct of any sort (Ex. L pp. 156-162).

In sum, the testimony of Doe and other employees clearly demonstrates that Oberweis had no

reason to suspect that Nayman was engaging in any harassing conduct. Moreover, even if the Court

finds that Oberweis knew or should have known of Nayman's hugging or "overly friendly" behavior

towards female employees, this information is "not sufficient to inform [Oberweis] that a severe

alteration of the terms and conditions of [Doe's] employment was imminent." Hawkins v. Maximus,

Inc., 2000 WL 1898494, *2-3 (N.D. Ill. 2000) (copy at Ex. W) (holding that minimal workplace

conduct did not put defendant on notice that plaintiff was the victim of sexual harassment or that she

would be assaulted by low level supervisor). Oberweis simply cannot be held responsible for the

16

256836.1

sexual encounter between Doe and Nayman where Doe's own mother did not anticipate the encounter or take any steps to prevent it even though she knew Doe was spending time at Nayman's apartment.

**III.    Doe's Negligence, Willful and Wanton Conduct and Assault and Battery Claims Are Preempted by the Human Rights Act**

In Illinois, when the allegations on which a state law tort is based constitute a civil rights violation under the Human Rights Act, 775 Ill. Comp. Stat. 5/1-101 et seq., the tort is preempted. More specifically, if the state common law action is "inextricably linked" to the allegation of discrimination, the courts do not have jurisdiction over the allegation. See Wilkes v. Harrah's Casino Joliet, 2003 WL 21196268, *3 (N.D. Ill. May 15, 2003) (Darrah, J.) (copy at Ex. DD).  To the extent Doe's negligence, willful and wanton conduct and assault and battery claims are based on her allegations of "overly friendly" behavior by Nayman at the workplace, there is no independent basis for Doe's claims other than the Human Rights Act. See Barnard v. City of Chicago Heights, 295 Ill.App.3d 514, 519-20, 692 N.E.2d 733 (Ill. App. 1st Dist. 1998).  Indeed, these claims simply reallege the factual allegations that form the basis of her Title VII claim. See id. at *3; Harrington-Grant v. Loomis, Fargo & Co., 2002 WL 47152, *5 (N.D. Ill. Jan. 11, 2002) (Darrah, J.) (copy at Ex. EE). Therefore, Doe's negligence, willful and wanton conduct and assault and battery claims are preempted by the Human Rights Act to the extent they rely on Nayman's workplace conduct.

**IV.    Doe's Negligence, Willful and Wanton Conduct and Assault and Battery Claims Are Barred by the Workers' Compensation Act**

Doe's state law claims must also be dismissed because the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq.*, provides the exclusive remedy for accidental injuries sustained in the workplace.  Even injuries inflicted intentionally upon an employee by a co-employee are "accidental" within the meaning of the Act because such injuries are unexpected and unforeseeable from the perspective of the employee and the employer. See Meerbrey v. Marshall Field and Co., Inc., 564 N.E.2d 1222, 1226 (Ill. 1990).

A plaintiff may avoid the exclusivity provision of the Act only if she can demonstrate that the employer or its alter ego intentionally injured her or the employer commanded or expressly authorized the injury.  Id.  In this case, there is no evidence that Oberweis commanded or expressly authorized

17

Nayman's conduct toward Doe. Likewise, Doe cannot show that Nayman was Oberweis' alter ego. It is well established that only personnel who are in a position to dominate corporate affairs, such as a corporate officer or owner, may be the alter ego of the company itself. See Jablonski v. Multack, 63 Ill. App. 3d 908, 912, 380 N.E. 2d 924, 927 (Ill. App, 1st Dist. 1978). Nayman was far from a corporate officer of Oberweis. He was in an hourly paid non-supervisory position.

Because Doe cannot show that Oberweis authorized Nayman's conduct toward her or that Nayman was Oberweis' alter ego, her claims of negligence, willful and wanton conduct and assault and battery are barred by the exclusivity provisions of the Illinois Workers Compensation Act.

## V.    Doe Cannot Establish Her Negligence Claim

Even if Doe's negligence claim is not preempted by either the Illinois Human Rights Act or the Workers Compensation Act, Doe cannot prove that Oberweis is liable for negligent hiring or supervision. In order for Doe to prove that Oberweis negligently hired or supervised Nayman, she must show that (1) Oberweis knew or should have known that Nayman had a particular unfitness for the position so as to create a danger of harm to third parties; and (2) Oberweis' failure to safeguard Doe against the particular unfitness proximately caused Doe's injury. See Montgomery v. Petty Management Corp., 323 Ill.App.3d 514, 519, 752 N.E.2d 596 (Ill. App. 1st Dist. 2001). Doe cannot meet these requirements.

As discussed above in Section II.F., there is no evidence that Oberweis had knowledge of any information suggesting Nayman was a danger to anyone. Furthermore, Doe cannot point to anything in Nayman's background indicating he was unfit to work for Oberweis. See Strickland v. Communications & Cable of Chicago, Inc., 304 Ill.App.3d 679, 682, 710 N.E.2d 55 (Ill. App. 1st Dist. 99). It is well established that the employee's unfitness must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position. See id. For the reasons already discussed, Nayman's alleged conduct toward Doe was not at all foreseeable.

Additionally, Doe cannot demonstrate that Nayman's alleged unfitness for his position proximately caused her injury. In a case very similar to the instant one, an Illinois appellate court found that the employer of a security guard was not liable for the rape and murder of a woman who worked at the store where the guard was stationed because the causal connection was too remote and

18

256836.1

an intervening act superseded the employer's negligence. See Carter v. Skokie Valley Detective Agency, Ltd., 256 Ill.App.3d 77, 628 N.E.2d 602 (Ill. App. 1st Dist. 1993). Specifically, the court noted that "it was not the fact Harris was a security guard that got him into Emma's car and proximately caused her injuries and death; it was the fact that she trusted him because she knew him from work." Id. at 82-83. Similarly, here, it was not Nayman's position as a shift manager that allowed him to have sex with Doe. Rather, it was Doe's friendship with Nayman, which led her to go to Nayman's apartment after work hours, that proximately caused her injury. Because Doe cannot show that her injury was foreseeable or that Oberweis' actions proximately caused her injury, her negligence claim must be dismissed.

**VI.    Oberweis is Entitled to Summary Judgment on Doe's Willful and Wanton Conduct Claim**

Like Doe's negligence claim, her claim of willful and wanton conduct requires that she establish Oberweis owed a duty of care, that Oberweis breached that duty and that an injury was proximately caused by the breach. For the reasons described above, Doe cannot make this showing. To establish willful and wanton conduct, Doe must further establish that Oberweis had a deliberate intention to harm or an utter indifference to, or conscious disregard for, the welfare of Doe. See Ontap Premium Quality Waters, Inc. v. Bank of Northern Illinois, 262 Ill.App. 3d 254, 260-61, 634 N.E.2d 425 (Ill. App. 2$^d$ Dist. 1994). Illinois courts have consistently held that a claim of willful and wanton conduct requires a showing that the defendant had knowledge of prior injuries or complaints which put the defendant on notice of potential danger. See Mostafa v. City of Hickory Hills et al., 287 Ill. App. 3d 160, 171, 677 N.E.2d 1312, 1320 (Ill. App. 1st Dist. 1997) (finding that plaintiffs failed to state a claim for willful and wanton conduct where they did not allege any prior complaints or injuries); Oravek v. Community School District 146, 264 Ill. App. 3d 895, 899-900, 637 N.E.2d 554, 556 (Ill. App. 1st Dist. 1994) (holding that mere knowledge of condition did not rise to the level of willful and wanton conduct); Koltes v. St. Charles Park District, 293 Ill. App. 3d 171, 178-79, 687 N.E.2d 543, 548 (Ill. App. 2d Dist. 1997) (affirming dismissal of plaintiff's cause of action because defendant was not aware of any previous complaints or injuries). Doe cannot show that Oberweis received previous

19

complaints about Nayman's behavior or that it consciously disregarded knowledge of any danger posed by Nayman. Consequently, her willful and wanton conduct claim must be dismissed.

**VII.    Summary Judgment Should Be Granted for Oberweis on Doe's Assault and Battery Claim**

Oberweis can only be liable for Nayman's alleged assault and battery of Doe pursuant to the doctrine of respondeat superior. Respondeat superior applies when the tort is committed within the scope of the tortfeasor's employment, meaning (1) the acts are of the type the employee is employed to perform, (2) they occur substantially within the authorized time and place limits, and (3) they are done, at least in part, by an intent to serve the employer. See Montgomery, 752 N.E.2d at 598 (rejecting assault and battery claim against employer where employee engaged in fistfight with customer in food line). Thus, Doe must establish a connection between Nayman's actions and a function he was performing for Oberweis. See id. Neither the sexual encounter between Doe and Nayman at his apartment nor Nayman hugging Doe at work meet these requirements. Indeed, as in Montgomery, Nayman's acts were not the type he was employed to perform and they were not performed with an intent to serve Oberweis. See id. Furthermore, the sex act at Nayman's apartment certainly did not occur within the authorized time and place limits set by Oberweis. Therefore, Doe cannot prove that Oberweis is liable for any assault and battery by Nayman.

Even if Oberweis were responsible, Doe cannot establish the elements of assault and battery. To prove battery, a plaintiff must show that the defendant intended to cause a harmful or offensive contact and that a harmful or offensive contact resulted. See Happel v. Wal-Mart Stores, Inc., 316 Ill.App. 3d 621, 630, 737 N.E.2d 650 (Ill. App. 2d Dist. 2000). An assault claim requires that the plaintiff prove she had a reasonable apprehension of an imminent battery. See Rosenberg v. Packerland Packing Co., 55 Ill.App. 3d 959, 963, 370 N.E.2d 1235 (Ill. App. 1st Dist. 1977). As discussed above in Section II.D., Doe cannot show that the sexual act or Nayman's workplace conduct constituted "offensive contact" or that she ever had a reasonable apprehension of offensive contact. Liability for assault and battery depends on the plaintiff's lack of consent to the touching. See Cohen v. Smith, 269 Ill.App. 3d 1087, 1090, 648 N.E.2d 329 (Ill. App. 5th Dist. 1995). The fact that Doe had consensual sex with Nayman and repeatedly visited Nayman's apartment, where he gave her "goodbye

20

256836.1

hugs" that she did not find offensive, clearly demonstrates that Nayman's conduct did not offend Doe's "reasonable sense of personal dignity." See id. Consequently, summary judgment must be granted for Oberweis on Doe's assault and battery claim.

## CONCLUSION

Based on the foregoing facts, arguments and authorities, this Court should grant Defendant's Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

OBERWEIS DAIRY

By: _Julia K. Oltmanns_
One of its Attorneys

Anthony J. Crement
Julia K. Oltmanns
Franczek Sullivan P.C.
300 South Wacker Drive
Suite 3400
Chicago, Illinois 60606
(312) 986-0300

Dated: January 21, 2005

21

256836.1