# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JANE DOE, ) ) Plaintiff, ) ) v. ) ) OBERWEIS DAIRY, ) ) Defendant. ) | No: 03 C 4774 Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Doe, filed suit against Defendant, Oberweis Dairy. Plaintiff alleges that she was subjected to a sexual battery outside of the workplace by Defendant's employee while she was a minor and employed by Defendant. Plaintiff brings one federal claim alleging sexual discrimination and harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and three state law claims alleging: (1) negligent hiring, training, and supervision; (2) willful and wanton misconduct; and (3) assault and battery. Presently before the Court are cross-motions for summary judgment; Defendant seeks summary judgment on all claims, and Plaintiff seeks summary judgment on her Title VII claim.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)

(*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (*Matsushita*); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits, are as follows.

Plaintiff was sixteen years old and was employed at one of Defendant's retail stores. Def.'s 56.1 ¶¶ 52, 53, 57. Plaintiff worked with Matt Nayman, who, at that time, was twenty-four years old. Def.'s 56.1 ¶¶ 12, 31, 57.

2

Plaintiff worked with Nayman between December 2001 and August 2002. *See* Def.'s 56.1 ¶¶ 57, 130. Beginning early in Plaintiff's employment with Defendant, Nayman squeezed Plaintiff's arm above the elbow five or six times and asked Plaintiff how she was doing. Def.'s Ex. A, Pl.'s Dep. at 101-103. Plaintiff responded by telling Nayman whether she felt happy or sad. Def.'s Ex. A, Pl.'s Dep. at 103. Nayman, also beginning early in Plaintiff's employment, put his arm around Plaintiff five or six times in a "side hug" or a "side squeeze." Def.'s Ex. A, Pl.'s Dep. at 102-104. Plaintiff did not believe this hug was sexual. Def.'s Ex. A, Pl.'s Dep. at 104.

On another occasion, Nayman gave Plaintiff a "happy-to-see-you type of hug" when she came to work. Def.'s Ex. A, Pl.'s Dep. at 108-109. In March 2002, Nayman also once gave Plaintiff a hug and a kiss on the cheek. Def.'s Ex. A, Pl.'s Dep. at 97. Nayman thought Plaintiff looked sad, and he was trying to make Plaintiff happy. Def.'s Ex. A, Pl.'s Dep. at 99. In June 2002, Nayman "playfully" hit Plaintiff on her behind with a rag. Def.'s Ex. A, Pl.'s Dep. at 96.

Further, in February or March 2002, Nayman told Plaintiff that she was pretty and that he did not understand why Plaintiff did not have a boyfriend. Def.'s Ex. A, Pl.'s Dep. at 100. Nayman would also tell Plaintiff that if she was not so young, he would want to date Plaintiff. Def.'s Ex. A, Pl.'s Dep. at 100. Plaintiff found these comments "flattering." Def.'s Ex. A, Pl.'s Dep. at 100. On three or four other occasions in June and August 2002, Nayman told Plaintiff that she was cute. Def.'s Ex. A, Pl.'s Dep. at 107.

Beginning in May 2002, Plaintiff visited Nayman's apartment on a number of occasions with friends. Def.'s 56.1 ¶¶ 62-69. Sometimes when Plaintiff left Nayman's apartment, he would give her a goodbye hug. Def.'s 56.1 ¶ 69. In June or July of 2002, Plaintiff's mother

discovered that Plaintiff was visiting Nayman at his apartment. Def.'s 56.1 ¶ 73. Plaintiff's mother told Plaintiff not to go to Nayman's apartment anymore, but Plaintiff continued to visit Nayman. Def.'s Ex. A, Pl.'s Dep. at 69. Plaintiff used her car to provide transportation for Nayman to visit a relative who lived forty-five minutes away in the suburbs. Def.'s 56.1 ¶¶ 77-78.

On a day Plaintiff did not work in August 2002, Plaintiff, Nayman, and another friend were at Nayman's apartment. Def.'s 56.1 ¶¶ 79-80. After eating dinner with her parents, Plaintiff returned to Nayman's house and gave the friend a ride home. Def.'s 56.1 ¶¶ 81-82. Plaintiff intended to return to Nayman's apartment with a few other friends but eventually decided to return alone because she had nothing else to do. Def.'s 56.1 ¶¶ 83, 86-89. Plaintiff intended to "hang out," as she normally would, at Nayman's apartment. Def.'s 56.1 ¶ 90. While they were alone at the apartment, Plaintiff and Nayman engaged in a sexual encounter. Def.'s 56.1 ¶¶ 91-105. During the course of this sexual encounter, Plaintiff asked Nayman to get a condom, which Nayman did. Def.'s 56.1 ¶¶ 101-104. Because Plaintiff was under the age of consent, Nayman eventually pled guilty to aggravated criminal sexual abuse. Pl.'s 56.1 ¶¶ 1-3.

After the sexual encounter, Plaintiff asked Nayman to purchase alcohol for her friend's party. Def.'s 56.1 ¶ 112. Plaintiff also asked Nayman to attend the party. Def.'s 56.1 ¶ 113. Plaintiff picked up Nayman at his apartment, went to a store to purchase alcohol, and then went to the party. Def.'s 56.1 ¶¶ 114-116. Plaintiff, Nayman, and several others spent the night at the house where the party was occurring. Def.'s 56.1 ¶ 120. The next morning, Plaintiff drove Nayman home. Def.'s 56.1 ¶ 121. Later that day, Plaintiff called Nayman to ensure that he was okay. Def.'s 56.1 ¶ 122.

Thereafter, Plaintiff's agent, on her behalf, filed a charge with the Equal Employment Opportunity Commission ("EEOC") against Defendant. Pl's Resp to Def's 56.1 ¶ 152. Plaintiff asked the EEOC not to reveal her identity to anyone other than Defendant, so that Defendant could respond to the charge. Pl.'s Ex. 64 at A00111, A00134. During the course of the investigation, the EEOC interviewed a number of witnesses concerning Plaintiff's charge and asked questions regarding: (1) background information, such as the name and age of the witness; (2) the witness's employment history with Defendant; (3) the work environment; (4) any behavior the witness observed that could be considered sexual harassment; (5) Defendant's policies regarding sexual harassment; (6) the witness's knowledge of sexual harassment complaints; (7) Nayman and his interactions and conduct with Plaintiff and other employees; and (8) any inappropriate behavior that involved or was directed towards Plaintiff. Pl.'s Ex. 64 at A00081-100, A00112-133.

However, Plaintiff refused to be interviewed by the EEOC. Def.'s 56.1 ¶ 154. On February 11, 2003, the EEOC investigator sent Plaintiff's agent/attorney a letter detailing the investigator's attempt to schedule an interview with Plaintiff and requesting the agent/attorney to do so. Def.'s Ex. X. On March 25, 2003, the EEOC investigator sent Plaintiff's agent/attorney a letter stating that he had persistently attempted to schedule an interview with Plaintiff for the past three months. Def.'s Ex. X. That same letter also provided notice to Plaintiff that her failure to cooperate within thirty-three days would result in a dismissal. Def.'s Ex. X. Five weeks later, on April 30, 2003, the EEOC dismissed Plaintiff's charge for her failure to cooperate and issued a right-to-sue letter. Def.'s 56.1 ¶ 155, Def.'s Ex. Y.

## ANALYSIS

A plaintiff must exhaust her administrative remedies with the EEOC before filing a charge in federal court under Title VII. *See Hill v. Potter*, 352 F.3d 1142 (7th Cir. 2003) (*Hill*); *Gibson v. West*, 201 F.3d 990 (7th Cir. 2000) (*Gibson*). A plaintiff is required to cooperate with the EEOC in order to meet the exhaustion requirement. *Hill v. Potter*, 352 F.3d at 1146; *Morris v. Albertson, Inc.*, No. 01 C 2099, 2001 WL 936118, at *2 (N.D. Ill. Aug. 17, 2001) (*Morris*); *Duncan v. Consol. Freightways Corp.*, No. 94 C 2507, 1995 WL 530652, at *3 (N.D. Ill. Sept. 7, 1995) (*Duncan*).

Here, it is undisputed that the EEOC attempted to schedule an interview with Plaintiff, but Plaintiff failed to cooperate. It is also undisputed that the EEOC provided notice to Plaintiff that her charge may be dismissed if she failed to cooperate within the next thirty days. It is further undisputed that the EEOC dismissed the charge because it could not be resolved without Plaintiff's cooperation.

However, "the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." *Gibson*, 201 F.3d at 994. Therefore, a plaintiff can present equitable reasons for her failure to comply with the exhaustion requirements. *See Gibson*, 201 F.3d at 994.

Plaintiff contends that her failure to cooperate should not bar her Title VII claim because: (1) the cases cited by Defendant regarding the exhaustion requirement involved only federal employees, which have different EEO procedures; (2) the EEOC failed to keep Plaintiff's identity confidential and disclosed intimate, personal details of Plaintiff; (3) Plaintiff fully cooperated with the EEOC by making her available to discuss the matter through her agent and

attorney, thereby allowing the EEOC to conduct an in-depth investigation; and (4) Plaintiff received the right-to-sue letter, demonstrating Plaintiff cooperated with the EEOC under 29 C.F.R. 1601.28(b)(3).

(1) Contrary to Plaintiff's assertion, cases cited by Defendant do not involve federal employers. The plaintiff in *Morris* worked at a supermarket, while the plaintiff in *Duncan* worked at an interstate freight shipper. *Morris*, 2001 WL 936118, at *1; *accord Duncan*, 1995 WL 530652, at *1.

(2) Plaintiff argues that she refused to be interviewed because the EEOC failed to keep her identity confidential and disclosed intimate details of the case to many of Defendant's employees, including some of Plaintiff's high school classmates. However, it is undisputed that Plaintiff permitted the EEOC to reveal her identity to Defendant so that Defendant could respond to the charge. It is reasonable, therefore, that witnesses, such as Defendant's employees, would also be interviewed regarding Plaintiff's charge. These persons could not be properly questioned without disclosing Plaintiff's identity.

The EEOC asked witnesses questions about Plaintiff, Nayman, the employment environment, and any acts of inappropriate conduct and sexual harassment involving Plaintiff or any other employee. While the questions may have elicited answers containing intimate information, those questions by the EEOC do not disclose intimate information.

(3) Plaintiff next contends that she fully cooperated with the EEOC through her agent/attorney, which allowed the EEOC to interview more than ten witnesses and conduct an in-depth investigation. In support of this proposition, Plaintiff cites *Jasch v. Potter*, 302 F.3d 1092, 1095 (9th Cir. 2002) (*Jasch*). However, that case provides:

7

> This case, however, does not fall within our rule or violate Title VII's exhaustion goal because [plaintiff's] participation in the investigation proved sufficient to permit the agency to examine his discrimination claim. . . . While the agency had the right to dismiss [plaintiff's] claim for failure to cooperate, it chose not to. Faced with the situation in which the complainant fails to respond to agency requests for additional information the agency is confronted with a choice. "The agency shall: dismiss an entire complaint . . . [w]here the agency has provided the complainant with a written request to provide relevant information . . . and the complainant has failed to respond to the request within 15 days of its receipt . . . , provided that the request included a notice of the proposed dismissal. Instead of dismissing for failure to cooperate, the complaint may be adjudicated if sufficient information is available." 29 C.F.R. § 1614.107(a)(7). **When an agency proceeds to reach the merits of the case rather than dismiss the claim for failure to cooperate, it has determined that sufficient information exists for such adjudication. After all, the agency itself is in a strong position to evaluate whether the complainant has sufficiently complied with its own requests for information. Of course, the complainant who fails to respond to agency requests for information does so at his own peril.**

*Jasch*, 302 F.3d at 1095 (alterations in original) (emphasis added). Although *Jasch* involved the regulation concerning dismissals for Title VII claims arising out of federal employment, the same reasoning applies in this matter.

The regulation concerning dismissals for Title VII claims arising out of private employment allows the EEOC to decide whether to dismiss an action for a failure to cooperate, as it chose to here:

> **Where the person claiming to be aggrieved** fails to provide requested necessary information, **fails or refuses to appear or to be available for interviews or conferences as necessary**, fails or refuses to provide information requested by the Commission pursuant to § 1601.15(b), or otherwise refuses to cooperate to the extent the Commission is unable to resolve the charge, and after due notice, the charging party has had 30 days in which to respond, **the Commission may dismiss the charge.**

8

29 C.F.R. § 1601.18 (emphasis added). Plaintiff has also failed to provide any authority for the proposition that the availability of an agent to answer questions regarding alleged harassment satisfies the cooperation requirement.

(4) Lastly, Plaintiff argues that the EEOC provided her with a right-to-sue letter under 29 C.F.R. § 1601.29(b)(3). That provision, however, states that the EEOC shall issue a right-to-sue letter even when a complaint is dismissed. The issuance of a right-to-sue letter does not guarantee a Title VII claim may be brought in federal court. The "EEOC's *pro forma* issuance of a right-to-sue letter when it terminates its processing because of such a failure to cooperate [does not] constitute[] a ticket of entry to the federal court." *Morris*, 2001 WL 936118, at *2; *accord Duncan*, 1995 WL 530652, at *3; *Prior v. US Cellular Corp.*, 46 F. Supp. 2d 808, 811 (N.D. Ill. 1999) ("[T]he mere receipt of a right to sue [sic] letter does not necessarily mean that a plaintiff has exhausted her administrative remedies . . . .").

Based on the above, no genuine issue of material fact exists as to whether Plaintiff failed to exhaust her administrative remedies. Defendant is granted summary judgment as to Plaintiff's Title VII claim.

Even if Plaintiff's Title VII claim was not barred by the exhaustion requirement, summary judgment must still be granted in favor of Defendant on the Title VII claim. To prevail on her hostile work environment claim based on sexual harassment, Plaintiff must demonstrate that: "(1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex;" (3) the harassment was "so severe or pervasive as to alter the conditions of employment and create an abusive working environment;" and (4) a basis for employer liability exists. *E.g.*, *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38 (7th Cir. 2004) (*McPherson*). Defendant

contends that: (1) the sexual encounter between Plaintiff and Nayman was not unwelcome, (2) events not involving the workplace cannot support Plaintiff's hostile work environment claim; and (3) any harassment Plaintiff suffered at work was not so severe or pervasive as to alter the conditions of her employment.

Plaintiff, citing *Mary M. v. N. Lawrence Cmty. Sch.*, 131 F.3d 1220, 1224 (7th Cir. 1997) (*Mary M.*), argues that the sexual harassment occurring at Nayman's apartment was unwelcome because it constituted statutory rape under Illinois law. Plaintiff cites 720 ILCS 5/12, contending that Plaintiff had not reached the age of consent in a case of sexual assault.

However, *Mary M.* involved Title IX, the statutory provision prohibiting sexual harassment in education programs which receive federal funding. *Mary M.*, 131 F.3d at 1224. In *Mary M.*, the Seventh Circuit refused "to apply welcomeness as it has been interpreted in the Title VII context to Title IX cases." *Mary M.*, 131 F.3d at 1227. Thus, the *Mary M.* court affirmed the appropriateness of the welcomeness inquiry in Title VII; indeed, the Seventh Circuit opined that "welcomeness is properly a question of fact in the context of Title VII employment discrimination cases." *Mary M.*, 131 F.3d at 1226 (citing *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986)). Therefore, contrary to Plaintiff's contention, welcomeness in Plaintiff's sexual encounter with Nayman is a relevant inquiry in determining whether Plaintiff was sexually harassed under Title VII.

It is undisputed that Plaintiff voluntarily visited Nayman's apartment alone the day of the encounter. It is also undisputed that Plaintiff asked Nayman to put a condom on before they had

sex. It is further undisputed that after the sexual encounter, Plaintiff voluntarily interacted with Nayman in social situations outside of the workplace. As such, no genuine issue of material fact exists as to whether the sexual harassment was not unwelcome either in fact or law.

Furthermore, there is no genuine issue of material fact as to whether the sexual encounter involved Plaintiff's employment. It is undisputed that, on the day of the sexual encounter, Plaintiff did not work and voluntarily visited Nayman's apartment. While Plaintiff cites cases indicating that harassing conduct occurring outside the workplace can be actionable under Title VII, these cases involve harassing conduct that either occurred with a nexus to employment-related activities or that further explains the severity and pervasiveness of the sexual harassment which occurred in the workplace. *See, e.g., Burlington Indus. v. Ellerth*, 524 U.S. 742, 748 (1988) (harassing conduct occurred, in part, on a business trip); *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 409-10 (1st Cir. 2002) (stating that conduct occurring outside of the workplace explains why the plaintiff was so frightened of harasser in the workplace).

The conduct which occurred at the workplace was not severe or pervasive. To determine whether conduct is severe or pervasive, "a court must consider the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1046 (7th Cir. 2002) (*Cerros*) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Thus, the social context of the offending behavior must be carefully considered in determining whether conduct is severe or pervasive. *Cerros*, 288 F.3d at 1046.

11

Here, it is undisputed that through Plaintiff's approximately eight-month employment with Defendant, Nayman only touched Plaintiff on fifteen occasions. As detailed above, these touches included squeezing Plaintiff's arm above her elbow, whereby Nayman would ask Plaintiff how she was doing, or giving Plaintiff non-sexual "side hugs." Once, Nayman gave Plaintiff a hug and kiss in an effort to make Plaintiff happy; and another time, Nayman gave Plaintiff a "happy-to-see-you type of hug" when she came to work. Nayman also "playfully" hit Plaintiff on the behind with a rag on one occasion. On a few occasions, Nayman made allegedly harassing remarks towards Plaintiff, but it is undisputed that Plaintiff found these remarks "flattering." Despite these allegedly harassing workplace events, Plaintiff continued to visit with Nayman socially outside of work, even after Plaintiff's mother prohibited Plaintiff from visiting Nayman. Accordingly, no genuine issue of material fact exists as to whether the conduct which occurred at Plaintiff's workplace was not severe or pervasive.

None of the remaining claims have original federal jurisdiction. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it had original jurisdiction." "[T]he general rule is that when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Kennedy v. Schoenberg, Fisher, & Newman, Ltd.*, 140 F.3d 716, 727 (7th Cir. 1998) (citations omitted) (*Kennedy*). Therefore, jurisdiction is lacking to consider Plaintiff's state law claims.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted; and Plaintiff's Motion for Summary Judgment is denied. The parties' motions to strike are denied as moot.

Date: April 6, 2005

JOHN W. DARRAH, Judge
United States District Court